**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>vs.<br><br>**QUINCY PEMBERTON, et al.,**<br><br>Defendant. | **CASE NO. 1:20-CR-0085-8**<br><br>**JUDGE HOPKINS**<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

Now comes Defendant, Quincy Pemberton, by and through counsel, and respectfully requests the Court impose a sentence of time served followed by three years of supervised release.

**I.      Procedural Posture**

On March 4, 2021, sixteen (16) defendants, including Mr. Pemberton, were indicted for a Conspiracy to Possess With Intent to Distribute 500 Grams or More of Methamphetamine and other substances. Doc. 32. With respect to Mr. Pemberton individually, he was charged in Count 5 of the 12 Counts with Trafficking in LSD. On April 26, 2023, Mr. Pemberton signed a Plea Agreement to Count 1, a violation of 21 USC 841(b)(1)(C), requiring no mandatory minimum prison term. Doc. 318. On May 30, 2023, Mr. Pemberton entered a plea of guilty. At the time of sentencing, Mr. Pemberton will have been incarcerated at the Boone County Jail for almost 3 years.

The 11(C)(1)(C) Plea Agreement contains a 60-month cap. According to the Presentence Investigation Report Mr. Pemberton was assigned a guideline sentence of 57 to 71 months. The Government submitted a memorandum seeking a 57-month sentence. For the following reasons, the Court should grant Mr. Pemberton's objections and/or requests for a variance and impose a sentence of time served.

**II. The Court should grant a variance based on the use of LSD rather than methamphetamine to calculate the offense level.**

Mr. Pemberton sold drugs to a confidential informant on two occasions. PSR ¶72. In total, he sold the confidential informant 2.844 grams of a mixture of LSD and methamphetamine, and 6.941 grams of cocaine. PSR ¶72. Two specimens were submitted to the Hamilton County Crime Laboratory for analysis: 1-1, a blue single scored tablet with a half-moon, and 2-1, 14 blue single scored tablets each with an imprint of a half-moon. The 14 tablets weighed 2.844 grams in total.

According to the lab, "at least 90% of the 14 tablets" contained some unknown amount of LSD. The two specimens were also contained in the same bag. It is unclear whether the LSD in specimen 1-2 was detected by virtue of being in the same bag as specimen 1-1 and/or how many pills contained LSD.[1] For example, the Guidelines assign a dosage weight of .5 milligrams per dose of LSD.[2] Because there are one thousand milligrams in one gram, this would equate to 2,000 doses of LSD in each pill which defies logic. Rather, there is a much higher probability that the pills contained methamphetamine with a detectable amount of LSD.

| Drug | Converted Drug Weight | Offense Level | Criminal History Category | Sentencing Guideline |
|---|---|---|---|---|
| Methamphetamine | 3 kg and 388 g | 10 | IV | 8-14 months |
| LSD | 285 kg and 388 g | 24 | IV | 57-71 months |

The gross disparity between the two substances demonstrate why the sentencing guidelines are advisory in nature. The median difference between eight (8) months and seventy-one (71) months is essentially a 36-month prison term, the equivalent of time served.

---

[1] For some unknown reason, the lab analyst refuses to return a phone call to counsel.
[2] Others in the field assign a dosage weight of .1 milligrams per dose of LSD. Here, that would amount to 10,000 doses in each pill. https://www.cnn.com/2020/02/27/health/lsd-overdoses-case-studies-wellness/index.html

> **III.     The Court should not consider the conduct in ¶¶'s 70 and 73 of the Presentencing Investigation Report when fashioning a sentence.**

In a conspiracy, the defendant may be sentenced for: all acts and omissions of others that were (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense. USSG § 1B1.3(a)(1)(B).

The ¶ 70 reference to Mr. Haskamp offering firearms for sale is not relevant to the conspiracy to sell drugs. Mr. Haskamp's advertisement of the sale of firearms may establish that Mr. Pemberton was aware that Mr. Haskamp was in possession of a firearm, but it does not amount to criminal activity and is unrelated to him buying and selling drugs through the conspiracy. He did not purchase a firearm and did not elicit anyone else to purchase a firearm therefore it was not in furtherance of the conspiracy. The same argument applies to firearm references throughout the facts by other co-defendants.

The ¶ 73 reference to an unrelated Kentucky traffic stop is not relevant conduct. The car in which Mr. Pemberton was a passenger did not belong to him, he was not the driver, and the individual driving the car was also charged with possessing the drugs. Upon information and belief, Mr. Taylor, not indicted in the federal conspiracy, pled guilty in that separate matter. The other individuals in the car were not members of the conspiracy which foregoes any joint undertaking. The drugs recovered in that car should not be calculated for purposes of sentencing.

> **IV.     Mr. Pemberton is entitled to a 2-point decrease in offense level for minor role.**

A minor role reduction applies to defendants who are "less culpable than most other participants, but whose roles could not be described as minimal." *United States v. Tatum*, 462 F.

3

App'x 602, 607 (6th Cir. 2012) (quoting USSG § 3B1.2, comment (nn.4–5)). The relevant inquiry is whether the defendant's conduct was substantially less culpable than the conduct of the average participant in the instant criminal enterprise. See *United States v. Bartholomew*, 310 F.3d 912, 924 (6th Cir. 2002). A defendant's actions should be compared to those of the average participant in a similar scheme. *United States v. Jackson,* 55 F.3d 1219, 1224-25 (6th Cir.1995).

Section 3B1.2 sets forth the factors: (i) the degree to which the defendant understood the scope and structure of the criminal activity; (ii) the degree to which the defendant participated in planning or organizing the criminal activity; (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority; (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; (v) the degree to which the defendant stood to benefit from the criminal activity. U.S.S.G. § 3B1.2, cmt. 3(C).

Regarding his individual conduct, Mr. Pemberton was indicted for selling more than one gram of LSD on November 5, 2020. The only information provided to Probation was the two confidential informant buys discussed above. In the discovery, there are discussions between Haskamp and Pemberton for the exchange of small quantities of drugs. For example, the intercepted phone call wherein they discussed twenty-eight grams of cocaine. The other text messages suggest people were looking for drugs, but it is not clear whether they were ever acquired. As reflected in the plea agreement, his only contact was with Mr. Haskamp and Mr. Jenkins and it was limited in time and scope. He did not know the other twelve members of the conspiracy. None of the forfeited items belonged to Mr. Pemberton. He had no possessions, accounts, firearms, or funds that indicate he benefitted from his low-level drug sales.

4

**V.     The 18 USC §3553 factors support a sentence of time served.**

It has been said that sentencing is an exercise in judgment, not a ritual, and certainly not an exercise in mathematical proof. *United States v. Grossman*, 513 F.3d 592 (6th Cir. 2008). If a sentence falls below the guideline range, it is reasonable unless the Court gives improper weight to any one of the §3553 factors. *United States v. Borho*, 485 F.3d 904, 912 (6th Cir. 2007).

(1) <u>The nature and circumstances of the offense and the history and characteristics of the defendant;</u>

Mr. Pemberton had a rough upbringing that cannot be fully described here. After his mother and father were incarcerated, he was separated from his siblings at the age of three and spent his formative years in foster care. In that setting he witnessed violence and suffered sexual abuse at an incredibly early age. After his mother served her 10-year prison term for a drug related offense, he was reunited with her, but the two were never able to form a mother-son bond. He turned to alcohol and drug use as a teenager which led to a series of bad decisions. He dropped out of school in the eleventh grade when he was sent to the Department of Youth Services (DYS). Mr. Pemberton's commitment to DYS was the catalyst for continued criminal behavior. With regard to the offense, this was a non-violent crime. Mr. Pemberton was a low-level drug dealer who made no real profit.

(2) <u>The need for the sentence imposed (1) to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense; (2) to afford adequate deterrence to criminal conduct; (3) to protect the public from further crimes; and (4) to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;</u>

This factor includes two components—specific deterrence and general deterrence. Specific deterrence looks to dissuade an individual defendant from committing future crimes, while general deterrence aims to have the same effect on "the population at large." *United States v. Camiscione,*

591 F.3d 823, 834 (6th Cir. 2010). Mr. Pemberton has been incarcerated in the Boone County Jail for almost three (3) years. According to Mr. Pemberton, his time in Boone County has been an exercise in survival. Without any access to sunlight, Counsel has witnessed him deteriorate physically and mentally with each visit. A three-year county jail sentence would be enough to deter anyone from future crime.

(3) The kinds of sentences available;

The Plea Agreement permits the Court to sentence Mr. Pemberton to time served.

(4) The kinds of sentences in the sentencing range established by the United States Sentencing Guidelines;

There is no mandatory minimum. The Court has the discretion to vary from the 57 to 71-guideline sentence. If the objection is granted for minor role, the guideline sentence would be 46 to 57 months. As discussed above, if Mr. Pemberton had received the associated offense level for methamphetamine, his guideline sentence would have been 8 to 14 months. With a two-point reduction for minor role, his guideline sentence would drop even lower to 4 to 10 months. Time served, or 36 months is a reasonable compromise.

(5) Any pertinent policy statement established by the Sentencing Commission;

Nonapplicable here.

(6) The need to avoid unwarranted sentence disparities among defendants with similar records or who have been found guilty of similar conduct;

The only disparities relevant in this case are those among federal defendants on a national scale. *United States v. Boucher*, 474 F.3d 889 (6th Cir ). In fiscal year 2022, a variance was granted in the Southern District of Ohio in 35.6% of all drug cases.[3]

(7) The need to provide restitution to any victims of the offense-

---

[3] 13 https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2022/ohs22.pdf

Not applicable here.

**VI. Conclusion**

Even if the Court overrules Mr. Pemberton's objections, it can consider them in support of a variance. His lack of guidance as a child, genuine remorse, and presentence rehabilitation support also support a variance. (See attached GED obtained in the Boone County Jaill). Further, the Court should consider Mr. Pemberton's extended incarceration in Boone County. Wherefore, Mr. Pemberton requests the Court sentence him to a term of imprisonment of time served or 36 months with three years of supervised release.

Respectfully submitted,

*/s/ Angela J. Glaser*
Angela J. Glaser (0091318)
The Law Office of Angela Glaser
810 Sycamore Street
Cincinnati, Ohio 45202
Phone: (513) 621-0065
Fax: (513) 263-9065
E-mail: angelaglaserlaw@gmail.com

**CERTIFICATE OF SERVICE**

A true and accurate copy of the foregoing has been served on all parties via their counsel of record through the Court's ECF System this 27th day of January 2024.

/s/ *Angela Glaser*

7